**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARCEL BIBEAU,

                                        Plaintiff,

                - v -                                           Civ. No. 8:08-CV-671
                                                                        (LEK/RFT)

DR. LAURA SODEN, Ph.D.,
DR. SAMUEL BASTIEN, VI, Ph.D.,
JOETTE HOLGADO

                                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

        On June 25, 2008, *Pro se* Plaintiff, Marcel Bibeau, filed a redacted Complaint, pursuant to

42 U.S.C. § 1983, alleging that his constitutional rights were violated.  Dkt. No. 1.  On September

12, 2008, Defendants filed a Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6).  Dkt. No. 14.

Bibeau opposes the Motion to Dismiss.  Dkt. No. 16, Pl.'s Mem. of Law with Exs.  Defendants

served a Reply to Bibeau's Opposition.  Dkt. No. 17, Senta  Siuda, Esq., Affirm., dated Oct. 24,

2008.  For the reasons that follow, we recommend that Defendants' Motion to Dismiss be **granted.**

## I.  COMPLAINT

        For the purpose of deciding this Motion to Dismiss, the Court will accept as true the

allegations set forth in the Complaint and the attachments.

        Bibeau is an inmate who has been in the custody of New York State Department of

Correctional Services (DOCS) since 1996.  He is also the father of S.B. and was married to Ann

Bibeau Moschos.  Prior to becoming a ward of DOCS, Bibeau was incarcerated at the Clinton

County Jail. While housed at the Clinton County Jail, he sought mental health and substance abuse

---

[1]  The Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3, referred this Motion to this Court for a Report-Recommendation.  Dkt. No. 19.

assistance. Dr. Soden, who worked for Clinton County Mental Health, examined and counseled him on his emotional and substance abuse problems. Compl., at pp. 2 & 3.[2] Bibeau complains that those interviews were supposed to be confidential pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPPA), Pub. L. No. 104-191, 110 Stat. 1936 (1996) but were subsequently and illegally revealed by Soden. *Id.* at p. 10.

In 2004, while still incarcerated, Bibeau sought visitation rights with his daughter and filed a petition with the Essex County Family Court, the Honorable Andrew Halloran, Family Court Justice, presiding. *Id*. at ex. 11. Ann Bibeau-Moschos opposed Bibeau's effort to visit with his minor daughter. On or about November 8, 2004, Justice Halloran directed Dr. Soden to conduct an evaluation of S.B. and to submit an evaluation. *Id*. at p. 3. Based upon information and belief, Bibeau claims that Soden did more than interview the child but also spoke with Bibeau-Moschos, whom he claims made false statements about him. Those false statements and Soden's opinions were contained in the evaluation with the recommendation that Bibeau be denied visitation with S.B. *Id*. at p. 4. Further, Bibeau alleges that when Soden interviewed Bibeau-Moschos, she shared, in sum and substance, confidential communications she had with him in 1996, all without his approval. *Id*. Lastly, Soden did not interview Bibeau. Bibeau complains that Soden generated false information and submitted a false evaluation, containing unsolicited lies, faulty opinions, and the improper dissemination of his confidential consultations, in order to prevent him from visiting with his daughter." *Id*. at pp. 5-7.

Because of this negative evaluation, he was "coerced . . .into entering on concent [sic] a very

---

[2] Bibeau generally pleads his lawsuit in brief paragraphs but he failed to number those paragraphs as required by FED. R. CIV. P. 8. Nonetheless, because of the orderly manner in which Bibeau states his claims, both the Defendants and the Court are able to follow Bibeau's statement of facts and list of causes of action. Therefore, it is not incumbent upon us to denote these paragraphs with numbers, and references to the pages should suffice.

limiting visitation order and a [sic] order of protection. *Id*. at pp. 6-7.

Looking at the Complaint, Bibeau's first cause of action states that Defendants conspired to violate his constitutional rights to equal protection, procedural due process, and due process. *Id*. at p. 2. His second cause of action appears to be a further recitation of the alleged facts. *Id*. at p. 3. His Third cause of action alleges slander, selective discrimination against him, deliberate indifference to his constitutional rights, and an Eighth Amendment violation. *Id*. at p. 5. However, in his Memorandum of Law, he states that his first cause of action is a conspiracy under 42 U.S.C. § 1986, the Second cause of action is the failure to act under the Eighth Amendment of the United States Constitution, and the Third is a denial of substantive due process and equal protection as found in the Fourteenth Amendment of the United States Constitution. Pl.'s Mem. of Law at p. 5.

## II  ANALYSIS

### A.  Motion to Dismiss Standard

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added). On a motion to dismiss, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."

*-3-*

*Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.; see also Wheeldin v. Wheeler*, 373 U.S. 647, 648 (1963) (inferring facts from allegations of complaint).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).[3] The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Thus, In spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State*

---

[3] By its opinion in *Bell Atlantic*, the Supreme Court recently abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968 (2007) (quoting *Conley*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id*. at 1969.

*Council of Carpenters*, 459 U.S. 519, 526 (1983).

Thus, the complaint must allege sufficient facts that would make the pleaded legal theories plausible.  *See Twombly v. Bell Atl. Corp*., 425 F.3d 99, 111 (2d Cir.2005); *Todd v. Exxon Corp*., 275 F.3d 191, 200 (2d Cir.2001). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293 (2d Cir.2003) (citation omitted), or where the complaint fails as a matter of law.  *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002).

### B.  Statute of Limitations

The first issue that the Defendants raise in their Motion to Dismiss is the statute of limitations.  In their view, all of the pleaded claims are untimely.  It is seminal law that a § 1983 action has a three year statute of limitations.  *Owens v. Okure*, 488 U.S. 235, 250-51 (1989) (cited by *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994); *Abbas v. Dixon*, 480 F.3d 636, 638 (2d Cir. 2007); *Ormiston v. Nelson*, 117 F.3d 69,71 (2d Cir. 1997); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995).  Although the statutory period is determined by state law, federal law determines the accrual of a § 1983 action.  As a general proposition, a § 1983 action accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action.  *Ormiston v. Nelson*, 117 F.3d at 71.  More comprehensively stated, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act becomes painful."  That is, "the crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Eagleston v. Guido*, 41 F.3d at 871 (2d Cir. 1994) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) & *Singleton v. City of New York*, 632 F.2d 185 (2d Cir.), *cert denied*, 450 U.S. 920 (1981)).  The burden of establishing a statute

of limitations rests with the defendant, *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991), *cert. denied sub nom Kulzer v. Owens-Corning Fiberglass Corp.*, 503 U.S. 939 (1992), and the burden of arguing equitable tolling of the statute of limitation resides with the plaintiff, *Walker v. Artuz*, 2002 WL 34243994, at *2 (2d Cir. 2002) (citing *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)).

The Complaint was filed on June 25, 2008. The issue for us is when Bibeau's constitutional claims accrued. The parties disagree as that question. Defendants argue that the matter accrued either when Dr. Soden spoke with Bibeau-Moscho on January 10, 2005, or on January 26, 2005, when Bibeau-Moscho's lawyer, Claudia Russell, sent a letter to Bibeau's attorney, Daniel Murray. Def.'s Mem. of Law at p. 2. On that date, Attorney Russell wrote that

> the report of Dr. Laura Soden contained some extremely damaging and disturbing information concerning Marcel Bibeau, not least of which is that he chose to conceal drugs and/or drug paraphernalia in the bedroom of his daughter, [S.B.], during the brief period of her infancy when he resided in the same household with the child and her mother.

Compl. at Ex. 10, Russel Lt., dated Jan. 26, 2005, at ¶ 4.

It is this information concerning concealing drugs in his daughter's bedroom that is purportedly included in the evaluation submitted to Family Court, which Bibeau claims to be false. On the other hand, Bibeau submits that the first time he knew of the evaluation and that his HIPPA rights were violated was on July 8, 2005, when he received a two-paged letter from ex-wife, Bibeau-Moschos. Compl. at p. B. She wrote, in part, that "[t]he psychologist that saw [S.B.] does know you. She treated you at Clinton County[] and she read your letters." Compl. at Ex. 9, Bibeau-Moschos' Lt., undated, at p. 2. It is the date that he received the letter that Bibeau contends his constitutional claims accrued. Pl.'s Mem. of Law at p. 11.

But, we must consider another material factor as to when this action may have accrued.

Pursuant to the Family Court order, the evaluation was apparently shown only to the lawyers in this custody/visitation case and then the attorneys either shared the evaluation with their respective clients or provided a digest of its contents. When Bibeau appeared in court on March 24, 2005, his attorney, in words and effect, summarized the contents of Dr. Soden's report as follows:

> Dr. Soden put some stuff in that report that pretty much destroyed any chance you had of seeing your daughter, my advise to you is to let me bargin [sic] with the respondent and try to get you some contact, Dr. Soden advises that you have no contact with her. We need to keep this evaluation out of a fact finding hearing or your [sic] going to get screwed royally.

Pl.'s Mem. of Law at p. 11.[4]

Afterwards, the parties conferred and entered into an agreement where Bibeau received "very limiting [sic] visitation order and a [sic] order of protection" was issued. Compl. at p. 7.

We may agree with Bibeau that he did not known or should not have known that he may have been harmed on January 10, 2005, but we do not concur with him that the accural date is July 8, 2005. Attorney Russell alerted him to the purported false information that was contained in the report on January 26, 2005, and his attorney confirmed, on March 24, 2005, that the contents of the evaluation were especially damaging to him and they "need[ed] to keep this evaluation out of a fact finding hearing." As to his § 1983 claims, Bibeau should have known or have been aware that he was suffering a wrong for which damages may be recovered, at the latest, on March 24, 2005. We reiterate that "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act becomes painful." *Eagleston v. Guido*, 41 F.3d at 871.

If for some reason, although none are articulated in his Memorandum of Law, Bibeau were to argue that there should be an tolling of the statute of limitations, his efforts would fail. Bibeau

---

[4] We realize that this information is neither in the Complaint nor in a sworn affidavit, but it is revealing and may be decisive in terms of when his constitutional action may have accrued.

has not made a showing nor do we find any extraordinary circumstances that would have prevented him from filing his complaint within three years after being apprised of the damaging, albeit alleged falsity within the evaluation by Bibeau Moschos's Attorney as well as his Attorney, sharing with him the evaluation's highly negative overview.  Both of these events occurred before March 25, 2005.  *See Hizbullahankhamon v. Walker*, 255 F.3d at 75.  Further, Bibeau does not provide an explanation for his delay in filing this suit until June 25, 2008.  Hence, these alleged constitutional claims are untimely.

As to any asserted intention tort causes of action, even giving Bibeau the benefit of the doubt, they are untimely as well.  Under New York Law, intentional torts, especially slander, libel, a violation of privacy, and false words causing special damages, have a one year statute of limitations.  N.Y.C.P.L.R. 215.  Accordingly, his Complaint is untimely in all respects and we recommend that his Complaint be dismissed.

### C.  Causes of Action

Even though we recommend that the Complaint be dismissed by virtue of the statute of limitations, we will considered, nonetheless, whether Bibeau has stated a cause of action.

Both the Defendants and the Court believed that Bibeau was asserting a private cause of action for violation of his HIPPA rights.  If a HIPPA violation occurs, the statute does not provide a private cause of action to the individual but merely provides an enforcement mechanism for the Secretary of Health and Human Services.  *Pierre v. County of Broome*, 2007 WL 625978, at *9 (N.D.N.Y. Feb. 23, 2007).  Bibeau acknowledges that there is no private cause of action under HIPPA.  Pl.'s Mem. of Law at p. 13.

Next, in responding to Defendants' contention that are no facts asserting that Dr. Basten was

personally involved in any act against Bibeau, Bibeau withdraws his suit against Dr. Basten. *Id.* at p. 13. *But see Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (there must be proof of an individual defendant's personal involvement in order to assert a constitutional claim for damages). At this juncture all who remain in this action are Dr. Soden and Joette Holgado. We will now review whether Bibeau has pled cognizable claims against both or either of them.

The crux of Bibeau's lawsuit is that false information was submitted to the Family Court which caused him to compromise his petition for visitation. The crucible is then: does Bibeau have a constitutional right to be free from false accusation in a report? Even if we assume that Soden's report was a total prevarication, or laced with false information, there is no general constitutional right to be free from being falsely accused.[5] *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). If there is no right to be free from false information and there is no private or constitutional right to have your medical information remain confidential, Bibeau is unable to state either a protective right or a substantive due process claim. We find no other facts to support a substantive due process claim or the deprivation of a liberty interest without due process. Therefore, we recommend that Bibeau's due process claim be dismissed.

Bibeau asserts that his right to equal protection was violated. The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). As a general rule, the equal protection clause protects suspect classes and fundamental rights against inequitable treatment. *LeClair v. Saunders*, 627 F.2d 606, 611 (2d Cir. 1980) (citing *Dandridge v. Williams*, 397 U.S. 471, 487 (1970) (equal protection clause

---

[5] There may have been a common law cause of action but, as we noted above, those claims are time barred.

is primarily concerned with classes and groups). To establish selective prosecution, a plaintiff must show that he, compared with others similarly situated, was selectively treated and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious intent to injure him. *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005).

Here, Bibeau has failed to articulate how he was discriminated in such a way that he was subject to inequitable treatment and his fundamental rights were violated. Making a false statement about the plaintiff does not constitute an equal protection claim. He has failed to show, compared with others similarly situated, that he was unconstitutionally selected to be harmed or injured. Therefore, we recommend that this cause of action be dismissed.

Moreover, there is no Eighth Amendment violation adequately pled in this case. The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Trammell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To prove a violation of the Eighth Amendment, the Second Circuit stated that an inmate must show,

> (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'

*Trammell v. Keane*, 338 F.3d at 161 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cited in *Trammell*, 338 F.3d at 162). Punishments prohibited by the Eighth Amendment include those that are "grossly disproportionate" to the severity of the crime including unnecessary

and wanton inflictions of pain which are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).  Hence, we recommend that this cause of action be dismissed.

We are somewhat confused if a conspiracy claim exists. If it does exist, it would have to involve Soden and Holgado, the only named and remaining Defendants. Yet, Bibeau states that he "withdraws all charges of conspiracy."  Pl.'s Mem. of Law at p. 13.  But prior to that, Bibeau proposes that his conspiracy claim is premised upon 42 U.S.C. § 1986, which, states in part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

If the conspiracy claims are not withdrawn and Bibeau is relying upon § 1986, his claim will fail. He did not plead a § 1986 cause of action in his Complaint.  Such a claim can only be found in his Memorandum of Law and it is improper to plead new facts and new causes of action in opposition to a dispositive motion.  *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) (noting that courts have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment)  (citations omitted).  Here, at least in terms of a § 1986 claim, the Complaint fails to identify those persons who had knowledge that there were wrongs being conspired to be done against Bibeau and then failed to prevent or aid in preventing the commission of those wrongful acts.

Assuming that the conspiracy counts have not been withdrawn, we will discuss whether Bibeau adequately pled a conspiracy cause of action under either §§ 1983 or 1985.  A § 1985 cause of action is succinctly mentioned in the Complaint.  Compl., at p. 5.  But, if Bibeau did not withdraw

*-11-*

his conspiracy claim, it would have to be dismissed as well for failure to state a cause of action.  To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a  right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586-587 (2d Cir.1988) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). These elements are not much different from a § 1983 conspiracy cause of action and we are compelled to discuss a § 1983 conspiracy because of ambiguities created by Bibeau's vacillating position on whether there is such a claim.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted); *Taylor v. Hansen*, 731 F. Supp. 72, 78 (N.D.N.Y. 1990).  Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.  "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)).

First, if there is no underlying constitutional violation, there can be neither a §§ 1983 or 1985 cause of action for conspiracy.  *Pangburn v. Culberston*, 200 F.3d at 72 ([A] conspiracy requires, *inter alia*, an agreement . . . to act in concert to inflict an **unconstitutional** injury."); *Singer v. Fulton*

*County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) for the proposition that a conspiracy lawsuit "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right") (emphasis added). Here, we have not found a constitutional violation stated within the Complaint. Nor have we found an equal protection violation or infringement of any privileges or immunities. Therefore, a conspiracy cause of action cannot stand. Moreover, Bibeau speaks of a conspiracy very generally but has not pled any facts that establishes that there was an agreement between Holgado and Soden, what the agreement may have been, that they acted in concert to injure him, and the overt act in furtherance of the conspiracy. If anyone did set out to injure Bibeau, the only person identified is Solden, and she alone cannot constitute a conspiracy. Accordingly, we recommend that this cause of action be dismissed.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss, Dkt. No. 14, be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

Civ. P. 72, 6(a), & 6(e).

Date:    February 2, 2009
         Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge